KNOLL, J.,
dissenting, in part, and concurring, in part.
|,As to Nos. 07-KK-1853 and 08-KK-1870 involving the Orleans Parish litigation, although I agree with the majority in its determination that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceedings, I respectfully disagree with its resolution of the question of whether the Orleans Parish Criminal District Court possessed the requisite subject matter jurisdiction to entertain Tenetr-Memorial’s motion for return of property.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ. Proc. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La.Code Civ. Proc. art. 2. |gThe jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court *998 which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ. Proc. arts. 3 and 925. Boudreaux v. State, Dept. of Transp. and Development, 01-1329 (La.2/26/02), 815 So.2d 7; see also Whittenberg v. Whittenberg, 97-1424 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158; Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 58 (La.App. 1 Cir.1990), writ denied, 578 So.2d 915 (La.1991). The issue of subject matter jurisdiction addresses the court’s authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Boudreaux, 815 So.2d at 13; Whittenberg, 710 So.2d at 1158; Tran v. Schwegmann’s Giant Super Market, 609 So.2d 887, 889 (La.App. 4 Cir.1992). See also Gravois v. Travelers Indem. Co., 173 So.2d 550, 553 (La.App. 1 Cir.), writ denied, 247 La. 1016, 175 So.2d 301 (1965). Moreover, it is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Boudreaux, 815 So.2d at 13; Renno v. Evans, 580 So.2d 945, 947 (La.App. 2 Cir.1991).
Louisiana jurisprudence treats an action for return of property under La.Rev.Stat. § 15:41 as a civil action, even if criminal statutes govern it in part. See State ex rel. C.C., 03-0762 (La.App. 5 Cir. 12/9/03), 864 So.2d 663, 667; State v. Baynes, 96-0292 (La.App. 4 Cir. 7/31/96), 678 So.2d 959, 962; State v. Lamb, 26257 (La.App. 2 Cir. 10/26/94), 645 So.2d 791; State v. Mart, 96-1584 (La.App. 1 Cir. 6/20/97), 697 So.2d 1055, 1058.
Even though the majority attempts to rest its disposition on the fact that La.Rev. Stat. § 15:41 bears a heading indicative of its inclusion as a matter associated with a criminal proceeding, I find that designation not dispositive of the issue. In \%State v. Page, 332 So.2d 427 (La.1976), a case originating with the Orleans Parish Criminal District Court, we recognized that although the underlying basis for declaring a person an habitual offender under the Motor Vehicle Habitual Offender Law, a criminal proceeding, also involves drivers license revocation proceedings which occurred because of that criminal proceeding, we held that latter revocation proceeding was nonetheless a civil proceeding and the Orleans Parish Criminal District Court lacked subject matter jurisdiction over such matter.
It is clear to me that although a nexus may exist between the initial proceeding in criminal court and the associated ancillary matter, this distinction between civil actions and criminal proceedings as applied in the case sub judice poses a jurisdictional problem. This threshold problem has a twofold basis: (1) the unique division in Orleans Parish between Criminal District Court and Civil District Court; and (2) the fact that in the matter now before us there is no present criminal matter pending in the Orleans Parish Criminal District Court.
Addressing La. Const. art. V, § 32 (referencing Orleans Parish Courts and Officials) in State v. Francois, we explained, “This section [La. Const. art. V, § 32] continues the former constitution’s separation between the civil and criminal district courts in Orleans Parish.” State v. Francois, 445 So.2d 416 (La.1983). In Francois, we held that in determining the question of jurisdiction the provisions of La. Const. art. V, § 32 should be interpreted with regard to the Louisiana Constitution of 1921. Prior thereto, in State v. Page we explained the jurisdictional division in Orleans Parish of the Criminal District Court and the Civil District Court, and stated, in pertinent part: *999 sive original civil jurisdiction as that of District Courts throughout the State....’ La. Const, art. VII, § 81 (1921). The original civil jurisdiction of the |,¡district courts alluded to in Section 81 was original jurisdiction ‘in all civil matters.’ La. Const, art. VII, § 35 (1921). Under that same 1921 Louisiana Constitution the Criminal District Court was vested with ‘exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors and offenses committed within the parish of Orleans, the jurisdiction of which is not vested by this Constitution in some other court.’ La. Const, art. VII, § 83 (1921). There was, however, another provision of the 1921 Constitution which authorized the Legislature ‘by two-thirds vote of all members elected to each house’ to change, alter or repeal any or all of the constitutional provisions covering the Criminal District Court for the Parish of Orleans.(FN6)
*998 Under the 1921 Louisiana Constitution the Civil District Court for the Parish of Orleans was vested with ‘the same exclu-
*999 For two cases which discuss and apply this provision, See State v. Brady, 310 So.2d 593 (La.1975); Sciambra v. Edwards, 270 So.2d 167 (La.App. 1st Cir.1972), writs refused, 273 So.2d 41.
Applying Page and Francois, it is clear to me the Orleans Parish Criminal District Court does not have subject matter jurisdiction to entertain Tenet Memorial’s motion brought under La.Rev.Stat. § 15:41. Although as recognized in Francois that “the legislature may completely abolish, partially erase or otherwise change the separation between these [Orleans Parish] courts by law,” Id., 445 So.2d at 416, I find no specific statute that would authorize the Orleans Parish Criminal District Court to adjudicate motions to return property under La.Rev.Stat. § 15:41 and the Legislature has not chosen otherwise. Accordingly, I would vacate the judgment of the trial court, finding the Orleans Parish Criminal District Court lacked subject matter jurisdiction, and dismiss Tenet Memorial’s motion to return property.
As to the petition for declaratory relief filed in the 19th Judicial District Court, No. 08-CC-1066 in this Court, I concur in the result and offer the following reasons.
|,-^Initially, I observe the majority opinion fails to address the contention made by the Doe plaintiffs, LifeCare and Dr. Anna Pou that anyone can raise the exemption provided in La.Rev.Stat. § 44:3(A)(1). Although I find no merit to this argument,[1] I nonetheless respectfully find that the failure to address this question robs this Court of an opportunity to lay this question to rest.
I also take issue with the majority’s conclusion that a resolution of the question regarding the reasonably anticipated criminal litigation exemption precludes the necessity of addressing the question of whether the Louisiana Attorney General waived assertion of this exemption because it was not raised in the trial court. With all due respect to the majority, I find such treatment fails to address and resolve a threshold question which, if resolved in favor of CNN and the Times-Pieayune, obviates the necessity of reaching the reasonably anticipated criminal litigation exemption.
I observe, as the majority does in passing, that this issue is complicated by the *1000 fact that Attorney General Charles Foti, the AG when this investigation was initiated and at the time the Orleans Parish special grand jury was convened, is no longer serving in this capacity. When asked at trial to address whether the AG’s office was asserting any type of law enforcement privilege in general to the file the AG’s office maintained,[2] the trial court was informed that no such general privilege was invoked. | ¿Thereafter, James “Buddy” Caldwell was elected as Louisiana Attorney General. In brief and at oral argument before this Court, the current AG vigorously invokes the public records exemption recognized in the Public Records Act. In this context and viewing the reasonably pending criminal litigation exemption in light of the purpose for that exemption, I find an agency’s inaction, i.e., its failure to assert this exemption at trial, does not implicate its continued viability. See Hill v. Mamoulides, 482 So.2d 26, 29 (La.App. 5 Cir.1986)(holding that “[n]either the statutes nor the jurisprudence authorize- any waiver of the exemption of privileged records from disclosure.”).
In a related matter, although I disagree with the broad interpretation the appellate court gave to the question of whether criminal litigation was reasonably anticipated for purposes of La.Rev.Stat. § 44:3(A)(1), I nonetheless find the trial court and the appellate court were presented with a full record of the investigative file with which to wrestle. In my view, it was the confluence two primary factors which complicated their review and which necessitate a remand of this matter: (1) the decision of the former AG to simply deposit a behemothic investigative record without vigorously asserting an exemption to disclosure of the individual documents; and (2) the AG’s failure to provide an index which could properly allow a meaningful examination of the applicability of any law enforcement exemption to the individual documents.
In Conella v. Johnson, 345 So.2d 498 (La.1977), we made it clear that a “meaningful opportunity must be afforded for cross-examination and presentation of evidence to contradict the claim of [law enforcement] privilege.” Id., 345 So.2d at 501. Similarly, in Winn v. City of Alexandria, the Court of Appeal, Third Circuit, addressing the public agency’s right to a contradictory hearing as part of the decision-making process in a public record request, stated:
17[T]he trial court erroneously limited the factors that it used in making its decision to the contents of the file. The record reveals no evidence that a contradictory hearing, as required by statute and Louisiana jurisprudence, was held at the time of the in camera inspection. The Rapides District Attorney should have been given the opportunity to rebut by argument and other evidence that the items sought by Winn were privileged and should not be disclosed.
Winn v. City of Alexandria, 94-206 (La.App. 3 Cir. 10/5/94), 643 So.2d 902, 905. Based upon this jurisprudence, I find it essential that each side in a public records dispute must be provided a meaningful contradictory hearing.
As noted hereinabove, the former AG chose not to assert the law enforcement privilege at the trial court hearing to the extent the current AG now embraces. Be *1001 cause of the procedural posture the AG adopted in this case at the time of trial, it is evident the lengthy hearings conducted did not fully explore the criminal litigation exemption as envisioned in the statutes and as developed in the jurisprudence.
Because the present case involves an excess of 50,000 pages of documents, I would call the parties’ attention to the particularization needed in the application of the asserted law enforcement exemption. La.Rev.Stat. § 44:3 requires more than judicial acceptance of a general assertion of privilege. Skamangas v. Stockton, 37,996 (La.App. 2 Cir. 3/5/02), 867 So.2d 1009, 1007, writs denied, 04-1099 (La.6/25/04), 876 So.2d 839, 04-1125 (6/25/04), 876 So.2d 843. A meaningful opportunity must be afforded for cross-examination and presentation of evidence to contradict the claim of privilege. Cormier v. In re Public Records of Request of DiGiulio, 553 So.2d 806, 807 (La.1989); Conella, supra; Freeman v. Guaranty Broadcasting Corp., 498 So.2d 218 (La.App. 1 Cir.1986); Elliott v. Taylor, 614 So.2d 126 (La.App. 4 Cir.1993). This does not mean the defendant must name the source or describe the informant or information with such particularity that the record is revealed before the judge adjudicates its disclosure. The nature of the document must be revealed, |,showever, as well as the assertion of privilege so that the requesting party may engage in a meaningful cross-examination. Further, the assertion of privilege must be made individually as to particular documents, and not in globo against the entirety of a mass of records. Skamangas, supra; Freeman, supra.
Having called attention to the need for a meaningful contradictory hearing as required in La.Rev.Stat. § 44:3(C) and considering the complexity of the record, I would further find it appropriate to provide guidance to the trial court, as the appellate courts did in Skamangas and Freeman, supra, on the manner to proceed in the adjudication of the public records request. In this regard, I find the following guidelines identified in Judge Guidry’s partial dissent in the present case helpful and, as modified, would suggest them for implementation on remand, to-wit:
(1) All documents the Attorney General has provided as representative of its investigative file shall remain confidential and under seal with the 19th Judicial District Court and shall remain sealed pending expiration of appellate delays;
(2) An index[3] to the entire investigative file shall be required. This index shall be accompanied with a certification from the custodian that all contents of the file were included in the index. The index shall numerically reference each document and generally reference the substance of each document so that the general substance of each document is ascertainable while shielding the public from view of the specific content and/or potentially private or confidential data. This document shall remain confidential *1002 and be initially presented to the trial court, under seal, for an in camera inspection;
ln(3) The trial court shall conduct an in camera inspection of the index to ensure all contents of the investigative file are itemized and that adequate descriptions are available to the parties;
(4) Before making the index available to the parties, the trial court shall make all needed redactions to the index;
(5) The trial court shall set a reasonable time for the parties to present written challenges. Challenges shall be presented in response to a specific document as itemized in the index and shall not be made in globo;
(6) With regard to challenges, a representative of the Attorney General’s Office shall have to state the particular privilege claimed and a meaningful opportunity for cross-examination shall be provided for each asserted privilege. Intervenors shall also be afforded the right to provide a specific challenge to a specific document;
(7) The trial court shall then examine each document and delete by excising, blocking out, cutting out or withholding in toto any reference to privileged information or issue a ruling declining the release of such documents. Any such judgment shall reference the specific document as itemized on the index.
In summation, in the determination of whether a public record is subject to disclosure, the applicability of a statutory disclosure exemption as to a specific document, once asserted, becomes central to a proper disposition of whether the law requires disclosure. Although the exemption must be weighed as part of the public records dispute, La.Rev.Stat. § 44:3(C) and longstanding jurisprudence require a full contradictory hearing in the trial court on this issue. Therefore, because of the peculiar evolvement of the law enforcement exemption in the present case and my concern that the requirement for a full meaningful contradictory hearing was not met at the hearing in the trial court, I agree with the majority’s reversal of the court of appeal’s holding on the issue of the law enforcement exemption on the ground that its determination was overly broad.
Furthermore, I disagree with the majority’s determination not to. address the Does’ contention that the AG’s file, including material not presented to the grand jury |1fland material prepared before the grand jury was impaneled, was considered secret. I find the failure to address this contention — one which involves the AG’s issuance of La.Code Crim. Proc. art. 66 subpoenas, the question of whether secrecy applies to any interviews the AG or the DA conducted with witnesses prior to the convening of the grand jury, and to what extent La.Code Crim. Proc. art. 434 may be applicable to correspondence between the offices of the AG and DA — may needlessly complicate the hearing on remand.
Finally, I find the majority opinion remiss in failing to address the Does’ contention that they have a twofold right of privacy: first to maintain the secrecy of their identifies and also to any statements made by them to the AG’s office. Regardless of the “reasonably anticipated criminal litigation” exemption delineated in La.Rev. Stat. § 44:3, I find the Does’ privacy issue viable and in need of resolution in this Court. In my view, the failure to address this concern in this forum further and needlessly clouds the proceedings on remand to the trial court.
For the foregoing reasons, I respectfully concur, in part, and dissent in 07-KK-1853 and 07-KK-1870, In Re: A Matter under Investigation, and concur only in the results of 08-CC-1066, Jane and John Does *1003 v. Charles Foti, Attorney General for the State of Louisiana, et al.

. Article VII, s 87 of 1921 Constitution provided that: "The Legislature may, after January 1st, 1924, by a two-thirds vote of all members elected to each house, change, alter or repeal any or all of the above provisions covering the criminal courts of the City of New Orleans and parish of Orleans.”

. When I read La.Rev.Stat. § 44:3(A)(1) in light of its purpose and effect, i.e., to protect pending litigation, I do not find support for the expansive reading of this statutory provision these parties advance. To the contrary, I find that only the listed agencies in La.Rev. Stat. § 44:3(A) may assert the exemption found in La.Rev.Stat. § 44:3(A)(1).

. The transcript indicates that the AG did invoke an exclusion for some documents or parts of documents, e.g., the file LifeCare volunteered to the AG pursuant to a confidentiality agreement, patient information, and similar personal data about employees, but did not exert the law enforcement exemption to particular items in its file. Rather, the AG simply presented its file in roto and left it to the trial court to determine what should and should not be released.

. My review of the record shows that on August 28, 2007, the trial court admitted into evidence two DVDs, containing documents of approximately 50,000 pages, that the AG offered and further ordered that this evidence remain under seal. At that same time, the AG introduced an index into evidence which purported to reference the documents on the DVDs. The testimony of Ellen Anderson, the AG investigative analyst who helped compile the index, revealed myriad problems with the index, i.e., the index lacked a systematic method of pagination; there was no way to tell from the face of the index what relationship any specific document had to the grand jury; an examiner of the index could not identify the documents separately and did not identify either the sender or recipient of any particular document; and there was no way to tell what was in the correspondence file, and whether that file contained subpoenas, memoranda or other like material.